Doyle, J.
That the judgment of the superior court is erroneous seems to us quite clear, and if we have power to review it, in tbe manner in which the question is. presented, it must be reversed.
The question arises in the case, how far and for what purpose, if at all, we can look at the bill of'exceptions to determine whether the judgment was based upon any evidence to sustain it, under the act of April 18, 1880, 80- Ohio L. 169.
That we cannot consider the weight of the testimony, or examine the bill of exceptions to determine whether the verdict or judgment is against such weight, is clear.' Watson v. State, ante. If there is any evidence in the record which, if true, would support the judgment it cannot be reversed here, whatever the fact may be as to where the clear preponderance is.
There is, however,-in the record before us no evidence-which, in view of the admitted facts, tends to establish that-any tax was due from the plaintiff upon the lot in question, or that any was in fact charged to him upon any duplicate in the hands of the treasurer; which duplicate is alone his authority to receive or collect any money as taxes from the citizen. That which was admitted upon the trial clearly shows that the. plaintiff had,paid all the taxes assessed or charged against his lot for the years in question; that no part of such lot had *359 ever been omitted from the tax duplicates; that there was no error to correct, and the auditor never .exercised the power granted him by sections 1038, 1039, 1010, Revised Statutes, to correct errors' in the duplicate; that the payment was made under a mistake to an officer having no authority to receive it, wholly without consideration, and under circumstances which justified the plaintiff in error in believing that it was charged against him on the duplicate, and that he was obliged to pay it.
These facts are not questioned here, but the judgment is sought to be maintained on the ground that the payment was voluntary, and hence no action to recover back the money thus paid, can be maintained.
The error, which appears to us manifest in this position, is in calling this the payment of a tax. If it be conceded that the payment was voluntary, in the sense that there was no legal process in the hands of the treasurer, and no duplicate containing the charge upon which he could distrain, or by returning the property delinquent sell the land, it nevertheless remains true that it was not the payment of a tax, but of a sum of money under a mistake to persons having no authority to receive it, although claiming such authority.
It was not a tax. It was never levied by any authority. It was never assessed, legally or illegally, upon any property or against any person. It was never charged upon any duplicate, either originally or by the auditor in the way of correction. It had no semblance of a tax, which may be so paid by the voluntary act of the party as will prevent him from recovering it back.
The paymeht was made, however, in pursuance of a demand made by this agent of the county commissioners, upon an order from the county auditor to the treasurer, authorizing him to receive it, and the delivery by the treasurer of a receipt for it as taxes. Assuming that these officers acted in good faith, and upon the belief that the sum was due, it was a mistake. The fact that they thus acted was sufficient to justify the belief, on the part of the plaintiff, that the requisite'steps had been taken to charge his lot with this tax on the dupli *360 cate. That alone would justify the treasurer in receiving it, and the plaintiff had the right to assume that he was acting legally, however illegal the tax might be. It was, therefore, a payment of money under a mistake of facts, and the question of whether it was voluntary or not, is not involved.
We find nothing in the oral testimony given ou the trial, 'which tends to qualify or contradict these admitted facts. If there was any conflict in the testimony as to whether this was a payment under mistake, we would still be compelled to reverse the judgment.
Upon that question, if it was disputed, the testimony offered by the plaintiff as to what occurred between himself and Hornberger was competent. He offered to show that Hornberger, who, it is admitted, was employed by the county commissioners, represented to him that this property was omitted from the duplicate; that over $400 was due from plaintiff for taxes upon such omitted part; that they were now charged against him on the duplicate, and that if he did not pay them penalty would be added, and his land placed on the delinquent list and sold. Taken in connection with the admitted facts, that every one of the statements thus made was untrue; that Hornberger accompanied plaintiff to the auditor’s office; that the auditor and treasurer both acted as if such statements were true, and received his money, which they would have no authority to do unless they were true, it was clearly competent for him to show that the statements of Hornberger led him into the mistake under which both himself and the officers acted. To determine whether that money was, in fact, paid under a mistake, all the circumstances attending such payment were competent to be proved.
We are not required, however, to place the decision upon that ground. We will assume that the officers acted in good faith, but under a mistake of the facts; that their action justified the belief by the plaintiff that this money was charged to him as a tax upon his property, and that he paid it undei that belief is quite clear.
Seeing nothing, therefore, in the record to support the *361 judgment of the court, we think we have the power to reverse it. Whether there is any evidence to support a verdict or judgment is a question of law. It is as if, had the case been tried to a jury, the plaintiff had requested the court to direct a verdict in his favor. If the action had been thus tried, we think it would have been the duty of the court to have directed the jury to return a verdict for the plaintiff at the close of the evidence.
In view of the admitted facts in the case, the testimony of the auditor and his deputy was wholly immaterial and incompetent. They say that these back taxes on this omitted land. were unpaid, and that these taxes are for an omitted part of the land not returned by the decennial assessor. It amounts to nothing more than saying that this $424.84 was unpaid, and that they claimed it was due for omitted land. But as it is admitted that no land was omitted, and no taxes due, it is of no importance whatever, and is wholly immaterial.

Motion granted and judgment reversed.